# A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA TO PASQUALE ANTHONY CIPOLLONE**<br><br>*UNDERLYING ACTION:*<br><br>PRESIDENT DONALD J. TRUMP, in his individual capacity,<br><br>Plaintiff,<br>v.<br><br>BRITISH BROADCASTING CORPORATION, *et al.*,<br><br>Defendant.<br><br>Case No. 1:25-CV-25894-RKA (S.D. Fla.) | Misc. No. ___________ |

**DECLARATION OF JOSHUA T. HOYT**

I, Joshua T. Hoyt, do hereby declare and state as follows:

1. I currently hold the position of Deputy Counsel to the President and Deputy Assistant to the President. I have held that position since September 7, 2026. In this capacity, I am responsible for, among other things, providing legal advice to the President and White House staff, including advice on matters involving the invocation of the presidential-communications privilege.

2. At the direction of the President, I submit this declaration formally invoking the

presidential-communications privilege with respect to the deposition testimony of Pasquale Anthony Cipollone subpoenaed by the British Broadcasting Corporation ("BBC") related to *Trump v. BBC*, No. 1:25-cv-25894-JTK-EAL (S.D. Fla. Dec. 15, 2025). I also submit this declaration to formally invoke deliberative-process privilege and attorney-client privilege with respect to the deposition testimony of Mr. Cipollone subpoenaed by BBC related to *Trump v. BBC*, No. 1:25-cv-25894-JTK-EAL (S.D. Fla. Dec. 15, 2025).

3. I base this declaration on my personal knowledge and information and documents made available to me in the performance of my official duties.

4. The civil suit entitled *Trump v. BBC*, No. 1:25-cv-25894-JTK-EAL (S.D. Fla. Dec. 15, 2025) ("defamation suit"), was brought by President Donald J. Trump in his individual capacity against BBC for defamation, among other similar claims, alleging that a 2024 BBC documentary contained "false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump" and his speech on January 6, 2021, *see id.*, ECF No. 124 ¶¶1-2, "to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting," *id.* ¶6.

5. In connection with the defamation suit, BBC, on August 12, 2026, issued a subpoena to Mr. Cipollone—who was serving as an Assistant to the President and the Counsel to the President ("White House Counsel") on January 6, 2021—to testify at a deposition. On September 22, 2026, BBC filed a motion to compel in the District Court for the District of Columbia, seeking to force the Department of Justice, Civil Division, Federal Programs Branch to permit Mr. Cipollone to comply with the subpoena issued to him in connection with the defamation lawsuit. *See BBC v. DOJ*, No. 1:26-mc-00135, ECF No. 1 (D.D.C. Aug. 12, 2026).

Among other things, BBC seeks testimony from Mr. Cipollone "about how President Trump responded and reacted" to "violence at the Capitol," *id.* at 10; "his communications with President Trump," *id.*; "his own interactions with and unique observations of President Trump on January 6," *id.* at 12; and "what he said to President Trump specifically, or what President Trump said in response," *id.* at 14.

6. On behalf of the Executive Office of the President, and at the direction of the President, I hereby assert the presidential-communications privilege with respect to the deposition testimony sought from Mr. Cipollone. I also assert the deliberative-process privilege and attorney-client privilege with respect to the deposition testimony sought from Mr. Cipollone. I have been authorized and designated to invoke presidential-communications privilege, deliberative-process privilege, and attorney-client privilege here.

7. During the events at issue in the defamation case, Mr. Cipollone was serving as an Assistant to the President and the White House Counsel—the highest level of direct presidential advisor in the White House and the highest-level White House lawyer. During that time, Mr. Cipollone represented both the Executive Office of the President and the President in his official capacity. His responsibilities included providing advice to the President and White House staff on a wide variety of matters relating to the President's constitutional, statutory, ceremonial, and other official duties and the effective functioning of the Executive Branch. On January 6, 2021, one of Mr. Cipollone's responsibilities was to provide confidential advice—including legal advice—to the President in connection with the President's decisionmaking and actions, as well as the actions taken by the Executive Office of the President, on that day. These conversations, especially those between the President and his White House Counsel, directly implicate the core

of a President's non-delegable Article II powers.

8. Mr. Cipollone's conversations with the President related to the President's decisionmaking and actions, as well as the actions taken by the Executive Office of the President, on January 6, 2021, which includes the advice provided by Mr. Cipollone to the President and the President's responses, have remained confidential. Indeed, when asked by a congressional committee to disclose such conversations, Mr. Cipollone appropriately asserted privilege.

9. The conversations, communications, and information at issue by the demanded deposition testimony of Mr. Cipollone are protected by the presidential-communications privilege. I have determined that the deposition testimony demanded here would reveal information that is inextricably intertwined with the President's decisionmaking process related to January 6, 2021, and the President's deliberations with his advisors. Based on my experience, the demanded deposition testimony would significantly harm the public interest, the Presidency, and Executive Branch decisionmaking. For example, the deposition testimony demanded here would have a chilling effect on communications with the Executive Office of the President, making it more difficult for the President to obtain candid advice from and explore alternatives with a wider circle of senior advisors and their staffs. The deposition testimony demanded here would also likely alter the decisionmaking process of future presidents by discouraging senior White House advisors from associating with (or associating their staff with), or offering full and candid advice on, presidential deliberations on potentially controversial topics—the precise issues where fulsome, candid advice is most valuable—narrowing the range of input and advice that a president receives. And the deposition testimony demanded here would discourage

qualified individuals from participating in public service in the Executive Office of the President—and particularly in high-ranking positions, such as the White House Counsel—or would more likely cause individuals to leave such positions when controversy arises. The above is true even considering the fact that the demanded deposition testimony is of a former White House Counsel regarding his performance of those official duties. If the deposition testimony demanded here occurs, it would greatly diminish the quality of decisionmaking within the federal government, make it more difficult for the President to perform his duties under the Constitution, and be contrary to the significant public interest against disclosure of presidential communications. It is imperative that the privileged information that BBC seeks to obtain through a deposition of Mr. Cipollone is protected from disclosure.

10. The conversations, communications, and information described above are also protected by the deliberative-process privilege. The discussions were deliberative because they concerned what action, if any, the President should take. The discussions reflect, among other things, who advocated certain positions, the rationale put forth for those positions, and the back-and-forth between participants to the discussions. The discussions were predecisional because they occurred before the ultimate decisions or actions. The disclosure of this predecisional and deliberative information would unduly impede the ability of the President to receive candid and honest advice from White House lawyers and close advisors and would harm the White House's decisionmaking process.

11. The conversations, communications, and information described above are further protected by attorney-client privilege. At the time, as now, Mr. Cipollone is a member of the bar of a court, and the President communicated with Mr. Cipollone, his White House Counsel, for

the purpose of securing primarily Mr. Cipollone's legal opinion and legal services, including on January 6, 2021. The disclosure of conversations, communications, and information covered by attorney-client privilege would, among other things, unduly disincentivize policymakers from seeking legal advice as part of the White House's decisionmaking, unjustifiably impede the ability of the President to receive candid and honest legal advice from White House lawyers, and materially harm the White House's decisionmaking process.

12. BBC has other ways to obtain any non-privileged information BBC seeks to obtain through deposition of Mr. Cipollone. There are many alternative sources of information in the public domain on the non-privileged information BBC seeks to obtain through deposition. For example, portions of Mr. Cipollone's recorded statements before the Select House Committee are publicly available and provide a ready alternative for BBC to obtain non-privileged information it seeks to obtain through deposition.

13. The fact that my assertion is limited to the presidential-communications privilege, deliberative-process privilege, and attorney-client privilege is in no way intended to suggest that the deposition testimony demanded here is not protected in whole or in part by other privileges or doctrines.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 9, 2026

Joshua T. Hoyt
Deputy Assistant to the President and
Deputy Counsel to the President