**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA TO PASQUALE ANTHONY CIPOLLONE**<br><br>*UNDERLYING ACTION:*<br><br>PRESIDENT DONALD J. TRUMP, in his individual capacity,<br><br>Plaintiff,<br>v.<br><br>BRITISH BROADCASTING CORPORATION, *et al.*,<br><br>Defendant.<br><br>Case No. 1:25-CV-25894-RKA (S.D. Fla.) | Case No. 1:26-mc-00142-JEB |

**REPLY IN SUPPORT OF MOTION TO QUASH**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 2

I. The Presidential Privilege Bars the Sought Testimony ........................................ 2

*A. The BBC fails to identify a compelling constitutional interest in Mr. Cipollone's testimony* ........................................................................................ 3

*i. The BBC cannot assert a* Dellums-*like argument because the Underlying Action does not raise constitutional claims against the government*.............5

*ii. The BBC cannot assert a* Dellums-*like argument because the sitting President himself asserts the presidential privilege over Mr. Cipollone's testimony*........6

*B. The BBC fails to establish that Mr. Cipollone's testimony is "central" to the underlying claims or that no adequate substitute exists for his testimony* ................. 9

II. The Attorney-Client Privilege also Bars the Sought Testimony ......................................11

III. The Testimony in the Grand Jury Proceedings Has No Bearing on the Government's Assertions of Privilege in this Case ........................................ 13

IV. The Subpoena Should be Quashed Under the Apex Doctrine ........................................ 16

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Am. C.L. Union v. DOJ*,
2016 WL 889739 (S.D.N.Y. Mar. 4, 2016) ........ 15

*BBC v. DOJ*,
No. 1:26-mc-00135, (D.D.C. filed Sep. 22, 2026)........ 4

*Brown v. D.C.*,
2021 WL 3883647 (D.D.C. Aug. 31, 2021)........11

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)........ 4, 9

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980)........ 15

*Council on Am.-Islamic Rels. v. USCIS*,
669 F. Supp. 3d 64 (D. Conn. 2023) ........ 15

*Ctr. for Effective Gov't v. U.S. Dep't of State*,
7 F. Supp. 3d 16 (D.D.C. 2013) ........ 15

*Dellums v. Powell*,
561 F.2d 242 (D.C. Cir. 1977)........ *passim*

*In re Grand Jury Subpoenas [Redacted]*,
No. 22-gj-33 (D.D.C. Nov. 19, 2022) ........ 13, 14, 15

*In re Lindsey*,
158 F.3d 1263 (D.C. Cir. 1998)........11, 12, 14

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997)........ *passim*

*In re United States (Holder),*
197 F.3d 310 (8th Cir. 1999) ........ 16

*Mehl v. EPA*,
797 F. Supp. 43 (D.D.C. 1992) ........ 15

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)........ 6

*Nixon v. Adm'r of Gen. Servs.*,
433 U.S. 425 (1977)........ 7, 8

*Schlefer v. United States*,
702 F.2d 233 (D.C. Cir. 1983) ........ 12

*Simplex Time Recorder Co. v. Sec'y of Lab.*,
766 F.2d 575 (D.C. Cir. 1985) ........ 16

*Sourgoutsis v. United States Capitol Police*,
323 F.R.D. 100 (D.D.C. 2017) ........ 16

*U.S. Dep't of Treasury v. Black*,
719 F. App'x 1 (D.C. Cir. 2017) ........ 6, 7

*United States v. Nixon*,
418 U.S. 683 (1974) ........ 2, 3, 9

*United States v. Poindexter*,
732 F. Supp. 163 (D.D.C. 1990) ........ 7

*WP Co. v. DOD*,
626 F. Supp. 3d 69 (D.D.C. 2022) ........ 12, 13

*Zimmerman v. Al Jazeera Am., LLC*,
6329 F.R.D. 1 (D.D.C. 2018) ........ 16

**Rules**

Fed. R. Civ. P. 45 ........ 2

## INTRODUCTION

As the party seeking to overcome the presidential communications privilege ("presidential privilege"), the BBC bears a heavy burden—rightly so. The Supreme Court has long held that the presidential privilege is rooted in the separation of powers. As a result, strong constitutional principles weigh against disclosure of presidential communications. Predictably, then, the party requesting disclosure must, at a minimum, identify a compelling and competing constitutional interest in favor of disclosure. As relevant here, civil suits such as the underlying defamation suit ("Underlying Action"), rarely give rise to a constitutional need for disclosure of presidential communications. This is not one of those rare cases: The BBC's purported need to depose the former White House Counsel, Mr. Cipollone, for events that occurred during his time as the highest-level White House lawyer in a civil defamation suit does not meet that high constitutional bar.

The BBC's only attempt at identifying a purported constitutional need for Mr. Cipollone's testimony relies on *Dellums*, which involved alleged conspiracy-like violations of First and Fifth Amendment rights by government defendants. The BBC attempts to analogize this case to *Dellums* by claiming that the President's individual-capacity defamation lawsuit has First Amendment *implications*. But this theory fundamentally overreads *Dellums*: That court concluded that the disclosure of the privileged discovery would enforce constitutional rights because the underlying *claims* alleged constitutional violations by the government. Here, by contrast, the BBC does not seek Mr. Cipollone's testimony for the purpose of adjudicating any First Amendment claim—nor could it. Its First Amendment rights are already protected by the "actual malice" standard, which dictates the adjudication of defamation claims by public officials. Besides, *Dellums* is also distinguishable on an entirely different ground: The privilege assertion there was much weaker

than the assertion here because it was asserted by the former (as opposed to the sitting) President. That distinction should be dispositive here.

Given the BBC's failure to identify any constitutional interest in Mr. Cipollone's testimony, the cannot overcome the presidential privilege and its subpoena should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (explaining that the Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"). But even if this Court determines that the BBC has identified a constitutional interest that favors disclosure, it should nevertheless quash the subpoena because the BBC has failed to show that Mr. Cipollone's testimony is "central" to the underlying claims, and that the evidence it seeks from Mr. Cipollone cannot be obtained elsewhere.

Additionally, attorney-client privilege bars the sought testimony because during the relevant period, Mr. Cipollone provided legal advice to the President in his capacity as the White House Counsel. Thus, attorney-client privilege provides an independent ground for quashing the subpoena.

Lastly, the subpoena should also be quashed under the apex doctrine. To overcome the apex doctrine, the BBC must justify its request to depose Mr. Cipollone—a former high-ranking government official—by identifying extraordinary circumstances that support the deposition. The BBC has failed to carry this burden.

## ARGUMENT

### I. The Presidential Privilege Bars the Sought Testimony.

At its core, the presidential privilege enforces the constitutional principle that the "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except

privately." *United States v. Nixon*, 418 U.S. 683, 706, 708 (1974); *see also Dellums v. Powell*, 561 F.2d 242, 246 (D.C. Cir. 1977) ("The privilege rooted in confidential communications with the President is constitutionally based, and entitled to great weight."). In fact, because "presidential communications deserve special protection," *In re Sealed Case*, 121 F.3d 729, 750 (D.C. Cir. 1997), "the presidential communications privilege is more difficult to surmount" than other forms of executive privilege, such as deliberative process privilege, *id.* at 746. And where, as here, the President has properly asserted the presidential privilege over Mr. Cipollone's testimony, the BBC bears the burden of establishing its "need" for the privileged materials. *Id.* at 742.

The BBC has not met its burden. First, it has failed to identify a compelling constitutional interest in the privileged testimony. And second, even if it had a constitutional "need" for the testimony, it has failed to establish that the testimony is "central" to the underlying claims and that no adequate substitute exists for it. *Id*. at 754.

### *A. The BBC fails to identify a compelling constitutional interest in Mr. Cipollone's testimony.*

Where, as here, the President has properly asserted the presidential privilege over Mr. Cipollone's testimony, *see* ECF No. 1-2, Exhibit A, ("Hoyt Decl."), the BBC bears the burden of establishing its "need" for the privileged materials by "balanc[ing] the public interests served by protecting the President's confidentiality in a particular context with those furthered by requiring disclosure," *In re Sealed Case*, 121 F.3d at 753. Importantly, as the government has previously explained, the caselaw makes clear that this balancing test only favors disclosure when the requesting party's "need" for the privileged materials has strong constitutional dimensions. *See* ECF No. 1-1 ("Quash Mot.") at 9-13. After all, to overcome the presidential privilege, the BBC must identify a "need" in the discovery that outweighs the "public interests served by protecting the President's confidentiality." *In re Sealed Case*, 121 F.3d at 753. And because the public interest

in maintaining confidentiality is itself rooted in the Constitution, courts have generally found that only another compelling constitutional interest can overcome the presidential privilege. *See* Quash Mot. at 9-13. Specifically, successful requests for presidential communications have generally fallen into three broad categories: (1) criminal proceedings, which implicate significant due process interests; (2) congressional investigations, which flow from Congress's constitutional interest in conducting oversight; and (3) civil suits alleging violations of constitutional rights by the government akin to *Dellums*, 561 F.2d. As the government's opening explains in detail, the BBC's request fails to trigger any of the three categories. *See* Quash Mot. at 9-13.

In its opposition, the BBC does not dispute that it must identify a compelling constitutional interest, but instead makes a futile attempt at asserting a *Dellums*-like argument. *See, e.g.*, ECF No. 9 ("Opp. to Quash Mot.") at 4-6. As the BBC sees it, this case is akin to *Dellums* because the underlying defamation suit is brought by the sitting President against a news organization, which "raises obvious and grave First Amendment issues." *Id.* at 5. And in the BBC's telling, this purported First Amendment interest automatically triggers *Dellums* and compels Mr. Cipollone to divulge his privileged conversations with the President for the sole purpose of advancing civil discovery. *Id.* at 4-6.[1]

The BBC's attempt to analogize this case to *Dellums* fails for two independent reasons: (1) unlike the plaintiffs in *Dellums*, the BBC does not seek privileged discovery for the purpose of

[1] The First Amendment is the only purported constitutional interest that the BBC invokes in its opposition. Although in its motion to compel, the BBC had identified a generic "due process" interest in Mr. Cipollone's testimony, *BBC v. DOJ*, No. 1:26-mc-00135, Mem. in Supp. of Petr's Mot. to Compel ("*BBC v. DOJ*, Mot. to Compel") at 5, 13-14, ECF No. 1-1 (D.D.C. filed Sep. 22, 2026), its opposition barely makes any mention of it, Opp. to Quash Mot. at 4-6. The omission is prudent. As the government's opening brief explains, the BBC's use of the phrase "due process" was seemingly colloquial and entirely detached from the legal doctrine on the Due Process Clause, which has far more relevance in the criminal context where "the need for information . . . is much weightier" than it is in the civil context. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 384 (2004).

adjudicating constitutional claims against the government; and (2) unlike *Dellums*, where the presidential privilege was asserted by the former President, here, the sitting President himself is asserting the privilege.

*i. The BBC cannot assert a* Dellums*-like argument because the Underlying Action does not raise constitutional claims against the government.*

In *Dellums*, the underlying *claims* were constitutional in nature. 561 F.2d at 244 n.2 (explaining that plaintiffs alleged that the government "deprived them of liberty without due process of law in violation of the Fifth Amendment, and infringed their rights to freedom of assembly, freedom of speech and freedom to petition the government for redress of grievances in violation of the First Amendment"). Thus, the court concluded that disclosure of the privileged discovery would "provide . . . [for] enforcement of constitutional rights." *Id.* at 247 (explaining that the claims concerned an alleged civil conspiracy by the government to violate constitutional rights). In other words, the disclosure of the sought privileged discovery served "a strong constitutional value" because it was intended to shed light on potential constitutional violations:

> [There is] a strong constitutional value in the need for disclosure in order to provide the kind of enforcement of constitutional rights that is presented by a civil action for damages, at least where, as here, the action is tantamount to a charge of civil conspiracy among high officers of government to deny a class of citizens their constitutional rights and where there has been sufficient evidentiary substantiation to avoid the inference that the demand reflects mere harassment.

*Id*. Here, by contrast, the BBC does not even attempt to argue that Mr. Cipollone's testimony would somehow shed light on potential First Amendment violations—nor could it. After all, there are no constitutional claims in the Underlying Action, which is merely a *private* suit for defamation between two private litigants. *See Trump v. BBC*, No. 1:25-cv-25894, First Am. Compl., ECF No. 124 (S.D. Fla. Aug. 8, 2026).

To be sure, the President is a party to the Underlying Action in his individual capacity. But

the Supreme Court has long-established guardrails to protect First Amendment rights in individual-capacity defamation suits by public officials. Specifically, the Supreme Court has established the "actual malice" standard, which "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). In other words, the BBC's First Amendment rights are *already* protected via the "actual malice" standard. *See* ECF No. 1-4, Exhibit C at 5 ("*Trump v. BBC*, Discovery Order") (applying the actual malice standard). Consequently, then, there is no need to adjudicate First Amendment claims against the government. In sum, unlike the Plaintiffs in *Dellums*, the BBC has no constitutional claims against the government, and thus does not seek to "enforce[] . . . constitutional rights," 561 F.2d at 247. This distinction alone dooms the BBC's *Dellums* analogy.

*ii. The BBC cannot assert a* Dellums*-like argument because the sitting President himself asserts the presidential privilege over Mr. Cipollone's testimony.*

The BBC's *Dellums* fails for an additional reason: Unlike *Dellums*, where the privilege was asserted solely by the former President, *id.*, the sitting President himself asserts the privilege here. That distinction is key to the privilege analysis. As the *Dellums* court made clear, the fact that the privilege there was asserted "solely by the former president" was "of cardinal significance" and prompted the court to employ a much weaker version of the presidential privilege. *See id.* (explaining that the assertion of the presidential privilege by a former president "carries much less weight than a claim asserted by the incumbent himself"). For this reason, *Dellums* has little (if any) application where, as here, the sitting President is asserting the presidential privilege. *See, e.g., U.S. Dep't of Treasury v. Black*, 719 F. App'x 1, 3 (D.C. Cir. 2017) (per curiam) (reversing a district court, which permitted disclosure of documents over which the Office of the President had

asserted privilege, in part because the district court relied on *Dellums* without considering that the presidential privilege in *Dellums* was only invoked by the former president).

In its opposition, the BBC resists the fact that *Dellums* has little relevance to instances where the sitting President himself asserts the presidential privilege. According to the BBC, even if the privilege is asserted by the sitting President, *Dellums*'s weaker version of the privilege applies unless the "communications involve[e] the *current* operation of government." Opp. to Quash Mot. at 6 (emphasis in original). In the BBC's view, because "Mr. Cipollone is a *former* advisor to President Trump from his *previous* term in office, and his testimony would concern events that took place five years ago," the President's assertion of privilege in this case is akin to the former President's assertion of privilege in *Dellums*. *Id.* at 6 (emphasis in original). The Court should reject this tortured reading of *Dellums*.

The BBC's reading of *Dellums* finds no support in the opinion itself. Contrary to the BBC's contention, the *Dellums* court was not concerned with whether the privileged *conversations* were "current." *Id.* (emphasis omitted). Rather, it was concerned with whether the privileged conversations (past or current) would interfere with the "ongoing operation" of the Presidency. *Dellums*, 561 F.2d at 248. This determination, the court concluded, was best left to the sitting President who is in the best position to determine whether "nondisclosure is necessary to the protection of the presidential office and its ongoing operation." *Id.*; *see also United States v. Poindexter*, 732 F. Supp. 163, 165 n.3 (D.D.C. 1990) (explaining that *Dellums* is consistent with the Supreme Court's recognition that "(1) an 'incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch, and to support invocation of the privilege accordingly,' and (2) 'there are obvious political checks against an incumbent's abuse of the privilege'" (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 448-

49 (1977))). In *Dellums*, the court contrasted the assertion of privilege by the sitting President to that by a former President and concluded that the latter assertion "has a cast of history[,] at first recent history, and ultimately mere history." 561 F.2d at 248. So, it reasoned, a former President's "[privilege] claim has less significance as an assertion of the current needs of the office." *Id.* Applying that reasoning here, the President is best positioned to determine whether "nondisclosure [of Mr. Cipollone's testimony] is necessary to the protection of the presidential office and its ongoing operation." *Id.* Thus, the assertion of privilege in this case materially differs from that by the former President in *Dellums*.

For these reasons, the BBC's *Dellums* argument—which serves as its only attempt to identify a compelling constitutional "need" in Mr. Cipollone's testimony—fails outright. This alone warrants quashing the subpoena. After all, when stripped of its purported constitutional interest in Mr. Cipollone's testimony, the BBC's "need" for Mr. Cipollone's testimony hinges entirely on its self-interest in prevailing in the underlying defamation suit. *See, e.g.*, Opp. to Quash Mot. at 1 ("[T]he BBC is . . . entitled to pursue evidence that refutes . . . element[s] of President Trump's claim."); *id.* at 11 ("The BBC, as a party to litigation with interests entirely separate and distinct from those of Congress, should be able to examine Mr. Cipollone itself, probe the veracity and contours of [his] statements, and ask further questioning tailored to the litigation." (citation omitted) (alteration in original)). While the BBC's self-serving litigation interest serves no "public" interest at all, there is "great public interest in preserving the confidentiality of conversations that take place in the President's performance of his official duties because such confidentiality is needed to protect the effectiveness of the executive decision-making process." *In re Sealed Case*, 121 F.3d at 742 (cleaned up)).

Moreover, because the Underlying Action is a civil suit, any discovery request lacks the

weighty "constitutional dimensions" of discovery requests in criminal proceedings. *Cheney*, 542 U.S. 367 at 384 (quoting *Nixon*, 418 U.S. at 707). As the Supreme Court has explained, "[t]he need for information for use in civil cases . . . does not share the urgency or significance of . . . criminal subpoena requests," which implicate "a 'primary constitutional duty of the Judicial Branch . . . to do justice in criminal prosecutions.'" *Id.* (quoting *Nixon*, 418 U.S. at 707).

Thus, whatever civil-litigation interests Mr. Cipollone's testimony might advance must yield to the public interest in protecting presidential confidentiality, which unlike the BBC's litigation interest, has significant constitutional dimensions. *See Nixon*, 418 U.S. at 708. The Court should grant the government's motion to quash.

### *B. The BBC fails to establish that Mr. Cipollone's testimony is "central" to the underlying claims or that no adequate substitute exists for his testimony.*

Even if the Court concludes that the BBC has identified a constitutional interest supporting disclosure, it should nevertheless quash the subpoena because (1) Mr. Cipollone's testimony is only tangentially relevant to the adjudication of the underlying claims, and (2) the BBC has failed to diligently pursue alternative sources for its sought discovery. *See In re Sealed Cas*e, 121 F.3d at 754 (explaining that to overcome the presidential privilege, the requesting party must show that "the subpoenaed [evidence] likely contains important evidence" and "is not available with due diligence elsewhere").

*First*, the BBC has failed to show that the sought testimony from Mr. Cipollone will establish facts that are "central" to the dispute. *Id*. Indeed, despite insisting that "Mr. Cipollone's testimony is highly relevant," Opp. to Quash Mot. at 6, the BBC fails to explain how the sought testimony relates to the crux of the dispute, which according to the Issuing Court pertains to "a [2024] documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart," *see* ECF No. 1-5, Exhibit

D at 4 ("*In re Hutchinson*, Order Quashing Subpoena"). The BBC speculates that Mr. Cipollone has information relevant to the underlying defamation claims because he "was one of the small group of individuals known to have communicated directly with President Trump on January 6, 2021, and to have personally witnessed President Trump's reaction to the news of violence at the Capitol." Opp. to Quash Mot. at 7. But as the government's opening brief demonstrates, the Issuing Court has already held that similar testimony regarding the events of January 6 were "largely irrelevant to the narrow issue in [the] lawsuit." *See In re Hutchinson*, Order Quashing Subpoena at 4-5; *see also* Quash Mot. at 13-15. The BBC's request for Mr. Cipollone's testimony seems predicated on an unfounded "entitle[ment] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events"—though both the magistrate judge and district judge have ordered otherwise. *In re Hutchinson*, Order Quashing Subpoena at 4; *see Trump v. BBC*, Discovery Order at 11; *see* Opp. to Quash Mot. at 7-8 (arguing that the magistrate judge "has ruled that the BBC is 'entitled' to" discovery regarding "President Trump's reaction to Mr. Cipollone's advice" on January 6). Thus, contrary to the BBC's contention, any connection between Mr. Cipollone's testimony and the underlying claims is, at best, tangentially relevant, but more likely "largely irrelevant." *In re Hutchinson*, Order Quashing Subpoena at 4.

*Second*, the BBC has also failed to establish that the evidence it seeks from Mr. Cipollone "is not available with due diligence elsewhere." *In re Sealed Case*, 121 F.3d at 754. The BBC seeks Mr. Cipollone's testimony "about the events of January 6." Opp. to Quash Mot. at 10. And yet, it fails to explain why gathering such evidence necessarily requires disclosure of privileged presidential *communications*. Besides, Mr. Cipollone (and others) have already provided publicly available testimony to Congress regarding "the events of January 6." The mere fact that Mr.

Cipollone did not disclose his privileged communications with the President to Congress does not render his congressional testimony an inadequate substitute.[2] Where, as here, the sought testimony is protected by privilege, even an imperfect substitute may be sufficient. *See Brown v. D.C.*, 2021 WL 3883647, at *6 (D.D.C. Aug. 31, 2021) (concluding that the public drafts of withheld drafts were sufficient substitutes gives the fact that "much of the factual information contained within the withheld drafts can be found in the final draft published for public").

**II. The Attorney-Client Privilege also Bars the Sought Testimony.**

Alternatively, the deposition subpoena should be quashed because it seeks testimony protected by attorney-client privilege. As Mr. Hoyt, the Deputy White House Counsel, explains in his declaration, "the President communicated with Mr. Cipollone, his White House Counsel, for the purpose of securing primarily Mr. Cipollone's legal opinion and legal services, including on January 6, 2021." Hoyt Decl. ¶ 11. These conversations between the President and his then-White House Counsel—which "concerned the seeking of legal advice"—are shielded from disclosure pursuant to attorney-client privilege. *In re Lindsey*, 158 F.3d 1263, 1271 (D.C. Cir. 1998) (per curiam) (citation omitted).

Previously, the BBC's only objection to the government's invocation of this privilege was premised on the erroneous proposition that under *In re Lindsey*, the President does not enjoy attorney-client privilege with his White House Counsel unless the Counsel is acting as the President's *private* attorney. *See BBC v. DOJ*, Mot. to Compel at 13. As the government explained in its opening brief, however, *In re Lindsey* stands for the much more modest proposition that attorney-client privilege does not preclude a government attorney from testifying in a *criminal*

[2] If anything, the fact that even Congress did not obtain Mr. Cipollone's privileged conversations with the President only highlights the importance of preserving the confidentiality of presidential communications. *See* Quash Mot. at 16.

proceeding. *See* Quash Mot. at 19-21. In its opposition, the BBC prudently abandons its prior misreading of *In re Lindsey*. Instead—in a transparently face-saving attempt to justify its initial reliance on *In re Lindsey*—the BBC insists that *In re Lindsey*'s rationale still applies because "the conduct and communications about which the BBC seeks testimony from Mr. Cipollone . . . was indeed investigated by the Special Counsel as possible criminal wrongdoing." Opp. to Quash Mot. at 14. This argument is a nonstarter. The Underlying Action is plainly not a "criminal proceeding[,]" *In re Lindsey*, 158 F.3d at 127; it is a defamation suit.

Additionally, the BBC also objects to the government's assertion of attorney-client privilege by arguing that the government has failed to establish that Mr. Cipollone provided "*legal* advice" to the President. Opp. to Quash Mot. at 13 (emphasis in original). This argument, however, is belied by the Hoyt Declaration, which explicitly states that "the President communicated with Mr. Cipollone, his White House Counsel, for the purpose of securing primarily Mr. Cipollone's legal opinion and legal services, including on January 6, 2021." Hoyt Decl. ¶ 11.

Moreover, the BBC argues that attorney-client privilege is inapplicable because "[n]othing in the Hoyt Declaration suggests that any advice Mr. Cipollone provided to President Trump on January 6 was based on confidential information that President Trump provided." Opp. to Quash Mot. at 13. In support, the BBC relies on two inapposite cases that involved information from third parties (not the client) for the purpose of providing legal analysis to the third parties. *See Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) ("The factual information contained in the [Chief Counsel Opinions] of concern . . . is not provided by the 'client' . . . but by a third party . . . who seeks a ruling from the Agency."); *WP Co. v. Dep't of Def.*, 626 F. Supp. 3d 69, 84 (D.D.C. 2022) ("The information submitted by [third parties] necessarily comes from third parties seek[ing] a ruling from the [a]gency." (citation omitted) (last two alterations in original)). Here,

however, Mr. Cipollone provided legal advice to the President (not to a third party). And the BBC's contention that the President—in receiving legal advice from Mr. Cipollone—did not reveal any confidential information, *see* Opp. to Quash Mot. at 13, is wholly speculative, and should thus be rejected.

**III. The Testimony in the Grand Jury Proceedings Has No Bearing on the Government's Assertions of Privilege in This Case.**

In an attempt to circumvent the government's assertion of privilege altogether, the BBC invokes then-Chief Judge Howell's rejection of then-former President Trump's assertions of the presidential privilege and attorney-client privilege covers certain testimony in a criminal grand jury proceeding. *Id*. at 4. The BBC speculates that if Mr. Cipollone was among the grand jury witnesses, and he testified to his privileged communications with the President, then those communications are no longer subject to privilege. *Id.* In other words, the BBC posits that the compelled disclosure of presidential communications in a criminal proceeding somehow "waives" the privilege for purposes of a civil proceeding. This argument fails for several reasons.

For starters, the BBC's theory would eviscerate the *In re Sealed Case*'s balancing test altogether. After all, under the BBC's logic, anytime *any* court compels the disclosure of privileged communications in *any* context, it effectuates a "waiver" of the privilege in *all* future proceedings before *all* other courts. Any such result would be entirely inconsistent with *In re Sealed Case*, which directs courts to make *case*-specific privilege determinations by "balance[ing] the public interests at stake in determining whether the privilege should yield in *a particular case*," by, among other things, "*specifically* consider[ing] the need of the *party* seeking privileged evidence." 121 F.3d at 746 (emphases added). Indeed, that is precisely the type of context-specific analysis that was invoked by then-Chief Judge Howell. In rejecting the assertions of privilege, the court focused on the fact that the privileged testimony was sought in connection with a criminal grand jury

proceeding, and thus concluded that the privilege disputes were "dispositively" and "squarely" resolved by *In re Sealed Case*, 121 F.3d, and *In re Lindsey*, 158 F.3d. *See* Mem. Op. at 24, 38, *In re Grand Jury Subpoenas [Redacted]* ("*Grand Jury Ruling*"), No. 22-gj-33 (D.D.C. Nov. 19, 2022) (explaining that the presidential privilege dispute "falls squarely—and dispositively" under *In re Sealed Case*, and that "[t]he binding precedent of *In re Lindsey* squarely applies to limit the former president's assertion of attorney-client privilege").

In response, the BBC downplays the glaring distinctions between that criminal proceeding and the at-issue defamation suit by insisting that "it is not clear from the redacted versions of those decisions whether those factors were in any way dispositive to those decisions." Opp. to Quash Mot. at 14. That assertion, however, cannot withstand scrutiny. *See*, *e.g.*, *Grand Jury Ruling* at 24-25 ("[T]he presidential privilege yields to demonstrated specific need in certain settings, such as . . . most relevant to the pending motion, criminal proceedings."); *id.* at 26 (explaining that "the D.C. Circuit [has] reasoned that the public interest in disclosure to a grand jury outweighed the public interest in protecting executive privilege"); *id.* at 27 (concluding "that the grand jury's specific need for the presumptively privileged communications overcomes the former president's assertion of the presidential communications privilege"); *id.* 33 n.22 (explaining that "[t]he former president's attempt to distinguish these facts from those in *In re Sealed Case*[], falls flat" because both cases pertained to "highly important and relevant evidence to the grand jury's ongoing criminal investigation")); *id.* at 34 (concluding that the sought testimony "possess[es] vital evidence for the grand jury, the importance and unavailability of which outweigh the presidential communications privilege in this case"); *id.* at 40 ("[G]overnment attorneys [can] not invoke attorney-client privilege to avoid testifying before a grand jury to matters relevant to criminal violations of the law."); *id.* at 41 (reasoning that the "executive branch attorneys . . . have a

responsibility and duty to inform the grand jury of information they possess pertinent to the grand jury's investigation"). This Court should reject the BBC's efforts to leverage then-Chief Judge Howell's grand-jury-specific privilege rulings here.

Besides, the BBC's theory ignores the limits of the waiver doctrine in the executive privilege context. As the D.C. Circuit has long recognized, courts have taken a "limited approach to waiver in the executive privilege context." *In re Sealed Case*, 121 F.3d at 741. For instance, the D.C. Circuit has explained "that release of a document [subject to executive privilege] only waives these privileges for the document or information specifically released, and not for related materials." *Id.*; *see also Mehl v. EPA*, 797 F. Supp. 43, 47 (D.D.C. 1992) ("The existence and scope of a waiver depends on the scope of the disclosure."). Likewise, several courts have acknowledged that the disclosure of presidential communication for "advisory purposes" does not defeat the privilege. *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 29 (D.D.C. 2013); *see Council on Am.-Islamic Rels. v. USCIS*, 669 F. Supp. 3d 64, 77 (D. Conn. 2023). And "permitting distribution of a [presidential communication] on a 'need-to-know' basis does not automatically undermine the confidentiality of [the communication]." *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 26 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)). Applying that reasoning here, any dissemination of presidential communications—pursuant to a court order—by Mr. Cipollone in the context of a *confidential* grand jury proceedings would not have "waived" the privilege outside that narrow context. *Cf. Am. C.L. Union v. DOJ*, 2016 WL 889739, at *5 (S.D.N.Y. Mar. 4, 2016) ("The *widespread* dissemination of documents, to persons well beyond the circle of close presidential advisors, will eviscerate the presidential communications privilege." (emphasis added)).

## IV. The Subpoena Should be Quashed Under the Apex Doctrine.

Lastly, the apex doctrine provides another alternative ground to quash the subpoena. The apex doctrine demands that the BBC establish that "extraordinary circumstances" justify the deposition of Mr. Cipollone's in his capacity as a former "top executive department officials." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985). Such extraordinary circumstances exist where the subpoenaed party has "personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6 (D.D.C. 2018) (quoting *Sourgoutsis v. United States Capitol Police,* 323 F.R.D. 100, 114 (D.D.C. 2017)).

Although the BBC concedes that the apex doctrine is applicable, it argues that Mr. Cipollone's testimony is nevertheless warranted due to "extraordinary circumstances." Opp. to Quash Mot. at 11-12. Recycling its prior arguments in favor of overcoming the presidential privilege, the BBC argues that the apex doctrine is satisfied because Mr. Cipollone's testimony regarding his "unique and specific interactions with and observations of President Trump on January 6" will be "highly relevant to the adjudication of the underlying defamation suit" and "[n]o one besides Mr. Cipollone possesses this knowledge." *Id.* at 12. These arguments fail for the same reasons identified above—namely, the sought testimony regarding the events of January 6 is far from "relevant and necessary" to the adjudication of the underlying claims, and the BBC has not established that evidence regarding the events of that day "cannot otherwise be obtained." *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999).

## CONCLUSION

For the above reasons, this Court should quash the subpoena issued to Mr. Cipollone.

Dated: October 30, 2026 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Section
Enforcement and Affirmative Litigation

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*